## Carpenter *v.* Cummings.

Voluntary declarations of a mortgagee are inadmissible to show a waiver of his rights under his mortgage in favor of a creditor of the mortgagor, whose rights have not been impaired by reason of such declarations.

A *bonâ fide* mortgagee of personal property, which was at the time of the execution of the mortgage in the possession of the mortgagor, will hold it as against a previous attachment, if he merely knew, when he took the mortgage, that the property had once been attached, and had no notice that the attachment was still subsisting.

And an assignee of such mortgage will also hold the property, although he knew, at the time of the assignment, that the attachment was claimed to be still subsisting.

When an officer is liable in trespass to an assignee of a mortgage of personal property, for taking such property on an execution against the mortgagor, and holding it until the assignee paid the amount of the execution and officer's fees, the measure of damages is the amount paid and interest, and reasonable compensation for the taking and detention.

Trespass, brought by A. P. Carpenter against William H. Cummings and others, for taking and carrying away

one pair of oxen. Plea, the general issue, with a brief statement, setting forth a justification of the taking, under an execution in favor of the defendants against one Torrence, and an attachment of the oxen upon the original writ in the suit in which the execution was issued.

It appeared in evidence that the oxen were attached by one Kelsea, a deputy-sheriff, upon said writ, January 20, 1857, and were placed by him in the custody of one Beane, in whose barn they were kept for a few days, when they got back into the possession of Torrence, without its appearing how they came into his possession ; that the writ against Torrence was duly returned and entered at the April term, 1857, of the Court of Common Pleas, an appearance entered for Torrence, and the action continued to the October term, when Torrence was defaulted and judgment rendered upon the default, for damages, $16.20 ; costs, $31.64 ; execution, .17. It further appeared, that on the 27th of March, 1857, and while the oxen were in Torrence's possession, he mortgaged them to one McKean, to secure the payment of a promissory note then given by him to McKean for one hundred dollars, money loaned. There was evidence tending to show that McKean considered the oxen to be worth about one hundred and forty dollars about the time of taking the mortgage. The mortgage and note secured thereby were assigned to the plaintiff on the 27th of August following—the note then being payable and unpaid, and the oxen being in the possession of McKean, he having taken them into his possession for breach of the condition of the mortgage, and having advertised them for sale on that day under the mortgage. The amount paid by the plaintiff to McKean, for the assignment of the mortgage and mortgage note, was about sixty dollars ; being the balance due on the note, there being an indorsement upon it of $39.30, dated August 27, 1857, paid by Torrence to McKean. It further appeared that on that day, previous to the assignment of

the McKean mortgage, the plaintiff sued out a writ of attachment against Torrence upon a demand which he held against him, and caused the oxen to be attached thereon, as McKean was about to expose them to sale at public auction, and thereupon Torrence executed to the plaintiff another mortgage of the oxen, to secure the payment of his demand, and at the same time the plaintiff paid McKean the amount of his claim secured by the mortgage, and took the assignment, and the oxen were delivered up to Torrence. There was evidence that McKean, at the time appointed for the sale of the oxen under his mortgage, bid one hundred and twenty or one hundred and twenty-five dollars for them, as the sale was about to take place, and was interrupted by the attachment in the plaintiff's suit against Torrence. At the time of taking his mortgage from Torrence, and the assignment from McKean, the plaintiff made out another mortgage of the oxen from Torrence to one Goodall, who had receipted to the officer for the oxen after they went from Beane's custody into the possession of Torrence, to indemnify Goodall against his liability on the receipt, which mortgage, however, was made subject to the plaintiff's.

On the 17th day of October following, the execution then being in the hands of the officer by whom the attachment was made, the defendants addressed a letter to him, instructing him to levy the execution upon the oxen by virtue of the attachment on the original writ. The plaintiff had, on that day, taken them into his possession under his mortgages, and in their letter to the officer the defendants say they understand the plaintiff intends to sell them in a few days.

On the 19th of October, being within the thirty days after the rendition of the judgment, the officer took the oxen from the possession of the plaintiff, in pursuance of the instructions from the defendants, the plaintiff forbid-

ding him to intermeddle with them, and refused to deliver them back to the plaintiff until he paid the amount of the execution and the officer's fees, being $50.80, which the plaintiff did on the same day.

It further appeared that Torrence died before the rendition of the judgment in the defendants' suit against him, but his death did not come to the knowledge of the parties to this suit, or of the officer, until after the oxen had been seized on the execution, and the plaintiff had paid him the money to regain the possession of them.

The court ruled, for the purposes of the trial, that the judgment and execution were sufficient to furnish a justification to the defendants, notwithstanding the death of Torrence before judgment, if, on other grounds, the justification was made out. There was evidence tending to show that when the oxen went from Beane's custody, back to the possession of Torrence, it was not with the consent of the officer, and there was no evidence that it was with the consent of the defendants; but it did appear that the officer took Goodall's receipt for them after they had gone back to the possession of Torrence. The court ruled that the evidence did not show a dissolution of the attachment as against the mortgages in the hands of the plaintiff, and that the question whether McKean and the plaintiff respectively had knowledge of the existence of the attachment at the times of taking their several mortgages, was material to the validity of the mortgages as against the attachment.

The evidence tended to show that McKean, in January, lived in the vicinity of Torrence; knew him and the oxen, and heard the attachment spoken of; and about the time of the attachment, understood, from casual conversations, that the oxen were attached, but had no other knowledge on the subject until the time of the execution of his mortgage on the 27th of March, when he inquired of Torrence, before taking the mortgage, whether they were not under

attachment, and was informed by him that the action in which they had been attached was settled, and they were released from the attachment. It appeared that the mortgage was made out and executed in the counting-room of the defendants' store, but it did not appear that either of them was in or about the store at the time; and that McKean, after being informed as above stated, made no further inquiry upon the subject of the attachment.

Some time after his taking his mortgage, McKean was informed that the defendants, or the officer, claimed that the oxen were held under the attachment, and he thereupon applied to the defendants to ascertain the amount of their claim, and made propositions for an adjustment of it; and the evidence tended to show that, in the course of several conversations between him and the defendants, prior to taking the oxen into his possession under his mortgage, he spoke of taking off the defendants' claim by paying it up, and of procuring authority from Torrence to settle the action, and expressed the opinion that, as there was probably enough to satisfy both claims, it might be best for him to pay the defendants in any event, and that he was satisfied he should have to pay theirs before he could get any thing under his mortgage. The defendants offered to prove that about the time of his taking the oxen into his possession, under the mortgage, he told the defendants that he was going to sell them, and out of the proceeds pay their claim, and apply the balance upon his own debt, as evidence, in connection with the foregoing testimony, of a waiver by him of his rights under the mortgage, as against the attachment; but it was excluded by the court.

It was agreed that at the time of taking the mortgage by the plaintiff, and of the assignment to him of the McKean mortgage, he had knowledge of the attachment as subsisting, unless it was dissolved by the proceedings and facts above stated. There was no evidence of any

demand made upon the plaintiff, at any time, for an account under oath of the amount of his mortgage debts. The court ruled that the officer had no authority to seize the oxen upon the execution, independently of the attachment on the original writ, and instructed the jury that if McKean, at the time of taking his mortgage, was informed in such way and from such source that men of ordinary prudence might reasonably act upon it, and in good faith understood that the oxen were not then under attachment, they then being in the possession of Torrence, the attachment was not valid as against the mortgage, although he might have understood, about the time the attachment was made, that they were attached, and although he might, by inquiring of the defendants, who were in his vicinity and accessible, have learned that their suit was not settled, and that the attachment was claimed by them to be still subsisting; and further, that if McKean took his mortgage in good faith, upon the understanding derived from such information that the attachment was not then subsisting, and assigned it, for a valuable consideration, to the plaintiff, it was immaterial, as to the plaintiff's rights under this mortgage, whether he, at the time of the assignment, had knowledge of the attachment as then subsisting or not.

The defendants requested the court to instruct the jury that McKean, having known that there was once an attachment, was bound to exercise ordinary diligence, in order to ascertain whether or not it was still subsisting at the time he took his mortgage, and that if the jury believed that he did not thus exercise ordinary diligence, he was to be considered chargeable with knowledge of the existence of the attachment.

The court declined to give instructions in those terms, but did instruct them on this point, as above stated. The court also instructed the jury that if they found for the plaintiff, he was entitled to damages equal to the sum paid

by him to the officer, and interest upon it, and such additional sum as would fairly compensate him for the taking and detention.

A verdict was returned for the plaintiff, which the defendants moved to set aside.

*C. W. & E. D. Rand,* for the defendants.

I. This is not one of those cases in which the party stands on a different footing from the officer with reference to justification by virtue of legal process. *State* v. *Weed,* 21 N. H. 262.

II. The judgment, if defective at all, was simply erroneous, and was a complete justification to the officer and party. *Blanchard* v. *Goss,* 2 N. H. 491; *Keniston* v. *Little,* 30 N. H. 318; *Woods* v. *Davis,* 34 N. H. 328; 2 Bac. Abr. 740.

III. The plaintiff's case requires that the judgment should be considered an absolute nullity as to all the world, which it certainly is not. *Tilton* v. *Gordon,* 1 N. H. 35; *State* v. *Richmond,* 26 N. H. 232; *Cook* v. *Darling,* 18 Pick. 393; *Lamprey* v. *Nudd,* 27 N. H. 303; *Gorrill* v. *Whittier,* 3 N. H. 265, 21; *White* v. *Landaff,* 35 N. H. 130; 15 U. S. Dig. 352–93; 14 U. S. Dig. 388–98; 13 U. S. Dig. 429–88; 430–114; 431–132, and following; 614–71; 12 U. S. Dig. 383–397; 11 U. S. Dig. 284–53; 5 U. S. Dig. 233–341– 342–345; 234–386; 2 U. S. Dig. 655–400.

IV. In answer to the point made by the plaintiff, that he is a stranger to the judgment and cannot bring error, and therefore may avoid it by plea and proof, we say he did not attempt to avoid it by plea and proof. He attacks the execution rather than the judgment. There is no conflict between the cases that a stranger may avoid an erroneous judgment by plea and proof, and the cases that hold that "whatever was done under an erroneous judgment, while in force, may be justified by the party." *Kelsey* v. *Wiley,* 10 Geo. 37.

V. It is not clear that the plaintiff might not bring error; that he is not a privy in estate. The argument assumes the validity of the attachment. The plaintiff took his mortgage upon the property attached, knowing that the attachment was still subsisting.

VI. But, if not a privy to the judgment, has the plaintiff any right to complain of it, even by plea and proof? *Green v. Kemp*, 13 Mass. 518; *Lamprey v. Nudd*, 29 N. H. 303.

We think the following rulings, to the prejudice of the plaintiff, are wrong. (1.) The defendants offered to prove that McKean, " about the time of his taking the oxen into his possession under the mortgage, told the defendant that he was going to sell them, and out of the proceeds pay their claim, and apply the balance on his own debt." This testimony should have been received. (2.) The court ruled that the officer had no authority to seize the oxen upon the execution, independently of the attachment on the original writ. Compiled Statutes, (ch. 207, sec. 4), seems to be an authority against the ruling. It is true, no demand was made in accordance with section 18, chapter 195, of the Compiled Statutes, but no law obliges the officer to make the demand the same hour or day that he takes the property, under the penalty of being treated as a trespasser. As soon as the property was taken, the execution was paid off, and there was no occasion for making a demand. (3.) The court should have instructed the jury that McKean was bound to exercise ordinary diligence, in order to ascertain whether or not the attachment was still subsisting at the time he took his mortgage. Kent's Com. 179; *Warren v. Sweet*, 31 N. H. 341. (4.) The court instructed the jury that it was immaterial, as to the plaintiff's rights under the McKean mortgage, whether he, at the time of the assignment, had knowledge of the attachment as then subsisting or not. This is erroneous. The plaintiff took the McKean mortgage with a full knowledge of the attachment. He ought not to be permitted to use

Carpenter *v.* Cummings.

the mortgage against the attachment. The good faith of McKean was not assigned to him. (5.) The measure of damages was incorrectly stated by the court. We think it should have been stated to be the excess of the sum of what the plaintiff paid McKean for his mortgage, and what he paid Kelsea to release the property from the execution, over and above the value of the property, together with such additional sum as would compensate him for trouble, &c. 17 U. S. Dig. 168–55; 14 U. S. Dig. 553–41; 11 U. S. Dig. 126–10; 9 U. S. Dig. 124–7, 125–27; *Bryden* v. *Moore,* 11 Pick. 362; *White* v. *Webb,* 15 Conn. 302; *Chamberlain* v. *Shaw,* 18 Pick. 283.

*Carpenter,* for the plaintiff.

I. The evidence offered by the defendants for the purpose of showing a waiver of McKean of his rights under the mortgage, was properly rejected. (1.) The evidence, if admitted, does not, even as against McKean himself, tend to show a waiver. His statement was voluntary and moved by no consideration. The defendants took no action upon the faith of it. They were subjected to no damage or expense, and McKean derived no advantage by reason thereof. *White* v. *Phelps,* 12 N. H. 384; *Swan* v. *Drury,* 22 Pick. 485. (2.) But even if McKean had, upon sufficient consideration, expressly agreed to postpone his mortgage to the attachment, the plaintiff, having no notice thereof, could not be affected thereby. He might safely rely upon the record.

II. The ruling of the court that the officer had no authority in this case to seize the oxen independently of the attachment is correct. (1.) There can be no pretence, upon the facts in this case, that the oxen were taken as being subject to a mortgage, or that there was any intention on the part of either the officer or party to recognize the existence of the mortgage. On the contrary, they acted in defiance of the mortgage, repudiating it as invalid.

The Compiled Statutes (ch. 195, secs. 18 and 19 ; ch. 207, secs. 4 and 6), have no application to a case of this character ; and, independently of those provisions of the statute, mortgaged property cannot be taken at all. *Angier* v. *Ash*, 26 N. H. 108. (2.) The case finds that the plaintiff was present at the seizure, and that no demand for an account was made by the officer, and therefore he had no authority to make the seizure subject to the mortgage. The mortgagee being present, the demand for an account must be made either before or immediately upon the seizure, no good reason being shown for not making it at that time. *Angier* v. *Ash*, 26 N. H. 108.

III. The court properly declined to instruct the jury as requested by the defendants. We believe the instruction given more favorable to the defendants than the law will warrant. We are not able to find that it has ever been decided that a purchaser of property, in possession of his vendor, cannot hold the same as against all attachments, although aware at the time of its subsistence of an unrescinded contract of bailment. There is a wide difference between the case of a purchaser and that of an attaching creditor. *Dunklee* v. *Fales*, 5 N. H. 528 ; *Clark* v. *Morse*, 10 N. H. 236 ; *Young* v. *Walker*, 12 N. H. 502 ; *Robinson* v. *Mansfield*, 12 Pick. 139.

IV. The ruling of the court, that it was immaterial whether the plaintiff, at the time he took the assignment of the mortgage, knew that the attachment was then subsisting or not, is unquestionably correct. *Trull* v. *Bigelow*, 16 Mass. 406 ; *Boynton* v. *Rees*, 8 Pick. 329 ; *Dana* v. *Newhall*, 13 Mass. 498 ; *Coffin* v. *Ray*, 1 Met. 212.

V. The rule of damages was correctly laid down by the court. (1.) The interest of the mortgagee (Torrence) was subject to seizure upon execution only in the manner pointed out by the statute (ch. 207, secs. 4 and 6) ; *Angier* v. *Ash*, 26 N. H. 206 ;—neither of those methods being pursued, the interest of Torrence remained unaffected by

the levy. The plaintiff was therefore bound to account to Torrence for the full avails of the property, and hence, upon all the authorities, should recover in damages the full amount which he was compelled to pay to procure their release. *Pomroy* v. *Smith*, 17 Pick. 85. The plaintiff had a right under the mortgage to sell the property himself at public auction. Comp. Stat., ch. 138, sec. 11. The rule of damages contended for by the defendants would compel the plaintiff to submit the question of the value of the property to a jury. This the mortgagor himself cannot do, and his creditor cannot, by levy or attachment, acquire any better or greater right.

VI. But whether the foregoing positions are sustained or not, the defendants' justification wholly fails. (1.) The judgment against Torrence was void—a mere nullity. The court had no jurisdiction of the person of the defendant. *State* v. *Richmond*, 26 N. H. 241; *Dewing* v. *Corwin*, 11 Wend. 647; *Mills* v. *Martin*, 19 Johns. 33; *Smith* v. *Knowlton*, 11 N. H. 191; *Horn* v. *Thompson*, 31 N. H. 574; *Tenney* v. *Filer*, 8 Wend. 569. (2.) If not a mere nullity, it was clearly irregular and voidable upon error brought by parties or privies. The plaintiff is a stranger, and cannot bring error, and he may therefore avoid it by plea. *Case of Randall & Ux.*, 2 Mod. 308; *Warter* v. *Perry*, 1 Cro. Eliz. 199; *Griswold* v. *Stewart*, 4 Cow. 457; *Down* v. *Fuller*, 2 Met. 135; *Proctor* v. *Johnson*, 2 Salk. 600; 5 Com. Dig., Error, D.; 5 Dane Abr., ch. 137, art. 4 & 8; *Leonard* v. *Bryant*, 11 Met. 307; *Horn* v. *Thompson*, 31 N. H. 574; *Smith* v. *Knowlton*, 11 N. H. 191; *Bell*, J., in *Drew* v. *Towle*, 27 N. H. 429; *Stickney* v. *Davis*, 17 Pick. 169; *Warren* v. *Cochran*, 27 N. H. 339; *Thrasher* v. *Haines*, 2 N. H. 443. (3.) The execution being issued after the defendant's death, was void. *Woodstock* v. *Bennett*, 1 Cow. 711; *Erwin* v. *Dundas*, 4 How. 58; *Styruts* v. *Brooks*, 10 Wend. 206; *Masser* v. *Long*, 2 Ham. (Ohio) 364; *Hildreth* v. *Thompson*, 16 Mass., 191; *State* v. *Pool*, 6 Ire. 288; *Heapy* v. *Harris*, 6 D. & E.

368. (4.) Although, being regular on its face, it might possibly justify the officer, it certainly can afford no justification to the party. *Simonds* v. *Catlin,* 2 Caines 60 ; *Parsons* v. *Lloyd,* 3 Wils. 341 ; *Britten* v. *Cole,* 1 Salk. 408 ; 2 Bac. Abr. 739, Execution ; *Albee* v. *Ward,* 8 Mass. 79 ; *Earl* v. *Camp,* 16 Wend. 562 ; *McGainty* v. *Herrick,* 5 Wend. 240 ; *Sanacot* v. *Boughton,* 5 Wend. 170. (5.) The attachment was dissolved by the rendition of the judgment. *Gilman* v. *Perkins,* 11 N. H. 343 ; Comp. Stat. 473.

Doe, J. The evidence of McKean's declarations, offered at the trial to show a waiver by him of his rights under his mortgage, was rightly excluded. Those declarations were no contract, for there was no consideration. They were no estoppel, for nothing was done or omitted to be done in consequence of them.

The ruling that the officer had no authority to seize the oxen upon the execution, independently of the attachment on the original writ, could have had no effect inconsistent with the undisputed facts. There was no evidence that the officer took the oxen as property subject to mortgage, intending to demand an account of the plaintiff, under Rev. Stat., ch. 194, sec. 4 ; but the case finds that the defendants instructed the officer to levy the execution upon the oxen by virtue of the attachment on the original writ, and that the officer took them in pursuance of those instructions, in the presence of the plaintiff, and refused to deliver them back to the plaintiff until he paid the amount of the execution and the officer's fees. Taking them by virtue of the attachment on the original writ, with knowledge of the plaintiff's claims, was equivalent to taking them with an absolute denial of the validity of those claims.

The principal question is upon the instructions given to the jury concerning notice to McKean of the attachment. After the oxen were attached on the original writ, they were placed by the officer in the custody of one Beane, in

whose barn they were kept for a few days, when they got back into the possession of Torrence, and it did not appear how they came into his possession. There was no evidence tending to show that when they went from Beane's custody back to the possession of Torrence it was not with the consent of the officer; there was no evidence that it was with the consent of the defendants; but it appeared that the officer took a receipt for them after they had gone back into the possession of Torrence. After they had been in Torrence's possession about two months, McKean took a mortgage of them from Torrence, having understood, from casual observations about the time of the attachment, that they were attached, but having inquired of Torrence at the time of taking his mortgage, and having been informed by him that the action in which they had been attached was settled, and that they were released from the attachment.

Where a receiptor of property attached has permitted the debtor to hold and use it as owner, the attachment is regarded as dissolved, so far that the property may be attached by another officer, who has no notice that there is a prior attachment still subsisting. *Whitney* v. *Farwell*, 10 N. H. 9. The mere fact that the property is used by the debtor would not seem to be enough to dissolve the attachment so that another officer could acquire a lien upon it, particularly where he knew there was a subsisting attachment; but the knowledge must extend beyond the fact that the property had been once under attachment. Where an officer finds property in the possession of the debtor, the mere knowledge on his part that the property has been attached will not prevent him from making a valid attachment of it. But if he know that there is a subsisting attachment and an unrescinded contract of bailment, although the debtor might at the time have the possession of the property, he cannot acquire a lien by attaching it. And these principles are not unreasonable. If

the officer find property in the possession of the debtor, and know only that it has once been attached, he might well presume that it was there because the suit had been compromised and the attachment dissolved. But if he know that the attachment and the bailment still subsist, and that the property is in the hands of the debtor merely for his temporary convenience, he will not be misled, and can make no such presumption. *Young* v. *Walker*, 12 N. H. 502.

McKean found the oxen in Torrence's possession, and knew only that they had once been attached. He might well have presumed that they were there because the suit had been compromised and the attachment dissolved. Open, exclusive possession of land by a purchaser whose deed is not recorded, is equivalent to notice of his title to subsequent purchasers; but such notice would not continue after such possession had ceased, and after the vendor had reëntered and remained two months in open, exclusive and peaceable possession. Torrence's possession raised a presumption that the defendants' attachment had been dissolved, and McKean had no information rebutting that presumption, or putting him upon inquiry. Under the instructions given, the jury must have found that McKean, in good faith and in the exercise of ordinary prudence, believed, when he took his mortgage, that the attachment had been dissolved. He inquired of Torrence, and the answer of Torrence was strongly corroborated by his possession of the oxen. The party who entrusted Torrence with such means of deceiving McKean should suffer rather than McKean. The instructions given to the jury included substantially those requested by the defendants, and were sufficiently favorable to the defendants.

The plaintiff having, for a full consideration, taken an assignment of McKean's mortgage and note, stands well upon McKean's ground; and if the attachment might

have been, at the time of the assignment, subsisting for some purposes and as to some persons, it is immaterial that the plaintiff had notice of it.

The rule of damages laid down by the court was correct. *Felton* v. *Fuller*, 35 N. H. 226. Of the other rulings, the defendants cannot complain.

*Judgment on the verdict.*